# IN THE COURT OF APPEALS OF IOWA

No. 22-0302
Filed January 11, 2023

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**SPENCER JERRICK CARTER,**
     Defendant-Appellant.

_____

     Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Ackley, Judge.

     Spencer Jerrick Carter appeals the sentences imposed following his guilty plea to assault on persons engaged in certain occupations and interference with official acts causing injury.  **AFFIRMED.**

     Chris Raker, East Dubuque, Illinois, for appellant.

     Brenna Bird, Attorney General, and Olivia D. Brooks, Assistant Attorney General, for appellee.

     Considered by Bower, C.J., and Greer and Badding, JJ.

**BOWER, Chief Judge.**

Spencer Jerrick Carter pleaded guilty to three counts of assault on persons engaged in certain occupations (FECR143874) and interference with official acts causing injury (SRCR144570).[1]  He appeals the sentences imposed in these two cases, asserting the district court considered improper factors when the prosecutor relayed information to the court, which Carter characterizes as improper victim statements.

"Our review of a sentence imposed in a criminal case is for correction of errors at law."  *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002).

Carter entered a global written guilty plea, which states in part:

> 7.  I admit that on or about the date(s) alleged, I did the following things that constitute the crime . . . .  *The court may rely on the record, including the minutes of testimony to find a factual basis*. . . .
> . . . .
> FECR143874 (Count IV) That on or about October 14, 2021, in Dubuque County, Iowa, the Defendant did harass Thomas Warner and threaten to commit a forcible felony.
> FECR143874 (Count V): That on or about October 14, 2021, in Dubuque County, Iowa, the Defendant did commit an assault against Matthew Levin, a uniformed peace officer.
> FECR143874 (Count VI): That on or about October 14, 2021, in Dubuque County, Iowa, the Defendant did commit an assault against Todd Sieverding, a firefighter.
> FECR143874 (Count [VII[2]]): That on or about October 14, 2021, in Dubuque County, Iowa, the Defendant did commit an assault against Steve Haupert, a firefighter.

---

[1] Carter appeared for a global sentencing hearing related to four separate criminal cases: SRCR143192, FECR143874, SMCR143875, and SRCR144570.  We have already addressed his appeal from the sentence imposed in SRCR143192.  *See State v. Carter*, No. 22-0336, 2022 WL 10828383 (Iowa Ct. App. Oct. 19, 2022) (affirming sentence imposed following his conviction for domestic-abuse assault, second offense).

[2] Paragraph 7 of the written plea has an obvious typographical error.  Paragraph 5 on the prior page of the written plea properly indicates Count VII concerns Firefighter Haupert, not Count IV.

. . . .

SRCR144570: That on or about December 7, 2021, in Dubuque County, Iowa, the Defendant did knowingly resist or obstruct Deputy Shane Freiburger, a uniformed peace officer, in the performance of his lawful duty and which resulted in bodily injury.

(Emphasis added.)

All the FECR143874 guilty pleas relate to events on October 14, 2021, when officers responded to a domestic abuse disturbance. The minutes of testimony state, in part:

> Officers from the Dubuque Police Department responded quickly, including **Matthew Levin [and] Thomas Warner** . . . . Officers located the defendant and attempted to speak with him in the living room of the residence. They observed the defendant to have red watery bloodshot eyes, slurred speech, and a strong odor of alcoholic beverage emanating from him. Officers located the no-contact order protecting [N.O.] from the defendant, and as the officers confirmed its validity with dispatch the defendant became uncooperative and attempted to rush into the separate room where other officers were talking with [N.O.]
>
> Officers restrained the defendant, including by using personal defense spray, and the defendant continued to refuse to cooperate with police attempts to move him. Officers requested assistance from the Dubuque Fire Department, and as the defendant was strapped to a cot and prepared to move he told Officer Warner, "I will kill you and your family." The defendant proceeded to spit on two different firefighters as he was being carried away, Firefighters **Todd Sieverding and Steve Haupert.**

The charge of interference with official acts causing injury arose from a fight between Carter and another jail inmate on December 7. The minutes of testimony state:

> State of Iowa expects to prove by the testimony of **Shane Freiburger, Mike Brehm and Andrew Harwardt** that they are deputies with the Dubuque County Sheriff's Office, all currently assigned duty at the Dubuque County Jail. They will testify concerning their training and experience, and they will testify concerning their knowledge of inmates Spencer Jerrick Carter, and [B. another inmate].

On December 7, 2021, [B.] and Carter were playing a card game together with two other inmates when a verbal altercation began between them. [B.] initiated physical contact by throwing a tablet at Carter; Carter attempted to strike [B.] back with the tablet, then both began punching one another. Deputy Freiburger separated the two, but as he restrained Carter, [B.] continued to attempt to attack Carter over Freiburger's back. Freiburger was ordering both to stop fighting, but both Carter and [B.] continued to strike at each other. Before other staff could get there, one of [B.]'s punches struck Freiburger in the back of the head.

Eventually other staff arrived and Deputy Harwardt used his taser to stun [B.] into submission. Both [B.] and Carter were handcuffed and removed from the unit. Freiburger had pain and difficulty lifting his right arm after the incident continuing for several weeks.

The court accepted the guilty pleas and set a time for a combined sentencing hearing.

The presentence investigation (PSI) report recommended jail terms and prison sentences rather than probation.

At sentencing, the prosecutor noted these counts concerned persons responding to the domestic assault call and later in the county jail:

It's a—a strong pattern of just being unable to contain his impulses or emotions when he is with not only law enforcement but also just paramedics who were there to help him out. . . . [W]e reached out to firefighters and police officers to see if any of them would like to give a victim impact statement. None of them did exactly, but Firefighter Todd Sieverding did say that he wanted to relay that placing a spit hood on a subject is sort of the last resort for what they do. It's demeaning, not only for the subject, but for the firefighters to do that, and if they can avoid using a spit hood, in any, in any sort of way, they would avoid doing so, but they weren't able to do that here because the Defendant continued to resist, even as they were trying to help him. Their hands were tied up holding the cot and the patient, but in order to make sure he caused no harm to himself or to us, we used the spit hood. So that's from Lieutenant Sieverding. Jaylen Freiburger submitted that he did not want to give a victim impact statement but he wants to relay that he's still on light duty due to the shoulder not healing, and that's from a couple weeks ago, so that may have changed by now. He understood that the other subject in the fight between the Defendant here and [B.], [who] was sort of the

more culpable of the two in the jail fight, so that Jaylen Freiburger was willing to grant more mercy to Carter. I don't necessarily share those feelings. It takes two to tango in that sort of situation, and Carter is just as culpable as [B.] for the injuries sustained by Deputy Freiburger.

The defense made no objection to the prosecutor's statements.

The prosecutor recommended the court impose prison terms and jail sentences. The defense argued for the suspension of sentences and probation with substance-abuse treatment.

Carter made a statement to the court and then responded to the court's question of what caused him to get into an altercation with the firemen:

> THE DEFENDANT: Your Honor, I have—I had been severely maced in the presence at the home. They caught me off-guard and my mouth was open, so I was just trying to clear my throat, because of all of the mace and stuff like that, and I was spitting, not on like the firefighters, but just trying to spit off, on the ground, to try to get the mace off, Your Honor.

The court ruled:

> These are a lot of offenses to consider, and the thing that is most problematic to me is the fact that there is a problem with alcohol but when some of these things have been occurring, alcohol was not the issue. So you've got a temper . . . . Then I have to break it down with regard to each of the offenses, what prompted everything, how it came about, and what it would do to whom. Incidences with officers is always a problem for the court. They're doing a job. They're trying to protect you as well as the community and those around you, and disrespect to officers is not tolerated. I wouldn't have safety in this courtroom without these officers here. I wouldn't feel safe leaving this building to go to my car on a number of occasions without these officers here. I appreciate everything that they do as well as over at the jail. I appreciate the fact that they keep the peace in the community where I want to be a part of. And when I see that people don't give them the due respect and recognize that people's lives are on the line on a regular basis, even when you're at the jail, that's a problem. And at your age, making the choice to stay in a relationship with a woman that you obviously don't have any respect for or you wouldn't have done what you did to her, that's also a problem. So, I can tell you I do appreciate the fact that you may

have been responsible for your children, but the other choices you have made at your age are not responsible, and I can't give you a suspended sentence on them. I will, however, take the recommendation of the PSI as opposed to what the State is recommending, so it will give you some relief, and I hope that once you get into the system, things go much more quickly for you, and that while you're there, you continue to maintain sobriety and seek that counseling that is necessary for you to recognize what your triggers are and how to stop you from going back into that same state.

So with regard to FECR143874, as I indicated, it will be a two-year term for Count III, two-year term for Count IV, 120 days on each Count V and VI. With regard to Count VII, another 120 days. Those will run consecutive to one another as recommended. . . . And it is not to lessen the impact of what you did with the officers, it is just a means for you to get situated for sentencing purposes, and I want you to recognize that I find those to be troublesome.

On appeal, Carter contends the prosecutor's relaying of information from the officers constituted improper victim statements and he is entitled to resentencing.

"We will not vacate a sentence on appeal 'unless the defendant demonstrates an abuse of trial court discretion or a defect in the sentencing procedure such as the trial court's consideration of impermissible factors.'" *State v. Lovell*, 857 N.W.2d 241, 242–43 (Iowa 2014) (citation omitted). "If a court in determining a sentence uses any improper consideration, resentencing of the defendant is required," even if it was "merely a 'secondary consideration.'" *State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000).

We see two problems with Carter's claim on appeal. First, there was no objection made about "victim statements." *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." (citation omitted)).

Second, there is nothing in the court's reasons to indicate it considered improper factors. The court does not mention the relayed statements at all. Rather, the court addresses the very nature of the charges to which Carter pleaded guilty—harassment of and assaults upon police officers, firefighters, and jail personnel. The minutes of testimony—which Carter agreed could be considered[3]—outline Carter's interactions with the named victims, including threats to kill one officer, physical assaults on others, spitting at firefighters, and being involved in the jail fight during which jail personnel were injured. The court noted, "Incidences with officers is always a problem for the court. They're doing a job. They're trying to protect you as well as the community and those around you, and disrespect to officers is not tolerated." We find no legal error and, thus, we affirm.

**AFFIRMED.**

---

[3] "The sentencing court should only consider those facts contained in the minutes [of testimony] that are admitted to or otherwise established as true." *Lovell*, 857 N.W.2d at 243 (alteration in original) (citation omitted).